IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMMIE COLLINS HUGHES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-678 |
| | § | |
| BRAD LIVINGSTON, *et al.,* | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The State of Texas plans to execute Tommie Collins Hughes ("Hughes") on March 15, 2006. Hughes has now filed a complaint pursuant to 42 U.S.C. § 1983 challenging Texas's lethal-injection procedure [Doc. # 1]. Hughes seeks a preliminary injunction or temporary restraining order to prevent Texas from implementing his execution by the protocol currently in use [Doc. # 7].[1] Hughes has also filed a request to proceed *in forma pauperis* and for his attorney to proceed *pro hac vice* [Docs. # 2, # 4]. Defendants have filed a motion to dismiss [Doc. # 8]. For the reasons provided below, this Court must dismiss Hughes's civil action with prejudice.

Texas has selected lethal injection as its sole method of execution of prisoners sentenced to death for capital crimes. The Texas statute governing lethal injection

---

[1] Gary Johnson was named lead Defendant named by Hughes in this case. Brad Livingston has succeeded Johnson as the executive director of the Texas Department of Criminal Justice. The Federal Rules of Civil Procedure require this Court to substitute Livingston as a party. *See* FED. R. CIV. PRO. 25(d)(1).

states that the executioner will carry out a capital inmate's sentence "by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead," but does not specify what substances should be used in that injection. *See* TEX. CODE CRIM. PRO. art. 43.14. Despite efforts by Hughes and other plaintiffs, Texas has refused to divulge the precise details of its execution protocol, including the nature and quantity of the substances used in the execution process. Hughes assumes that his execution will involve a three-drug combination of sodium pentothal, pancuronium bromide, and potassium chloride. Hughes alleges that the combination and sequence of these drugs puts the prisoner to sleep, although he fears it is only briefly and inadequately; paralyzes the prisoner's muscles; and masks to the observer the excruciating pain the prisoner experiences during an execution. Hughes asserts that the combination of drugs is ineffective to alleviate the inherent pain the procedure entails, and also that personnel performing the execution have inadequate training and limited expertise, which heightens the possibility of prisoners' pain and suffering in the execution process. Hughes seeks to enjoin Texas from using its current protocol to carry out his death sentence.

Defendants argue that serious procedural concerns doom Hughes's lethal-injection challenge. Hughes has chosen to advance his challenge to Texas's lethal-injection procedure in a civil rights complaint as opposed to a habeas corpus petition.

The Supreme Court, and also the Fifth Circuit, have not yet "reach[ed] the difficult question of how to categorize method-of-execution claims generally." *Nelson v. Campbell*, 541 U.S. 637, 644 (2004). The question of which legal vehicle appropriately advances Hughes's current claims transcends intellectual curiosity. If relief for Hughes's claims only lies in habeas law, the successive-petition prohibition found in 28 U.S.C. § 2244(b)(2) prevents this Court from affording him any relief, including a stay of execution, without prior authorization from the Circuit Court. The Fifth Circuit, however, has avoided characterizing method-of-execution cases as either habeas or civil rights actions, generally finding other reasons not to postpone the inmate's execution. *See, e.g., Smith v. Johnson*, ___ F.3d ___, 2006 WL 330114 (5th Cir. Feb. 14, 2006) (denial based on delay in bringing the claim); *Neville v. Johnson,* ___ F. 3d ___, 2006 WL 291292, at *1 (5th Cir. Feb. 8, 2006) (same); *White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005) (same); *Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004) (same); *see also Aldrich v. Johnson*, 388 F.3d 159, 161 (5th Cir. 2004) (unpublished) (denial based on failure to show a viable alternative to Texas's supposed lethal-injection protocol); *Hines v. Johnson*, 03-21173, 133 Fed. Appx. 145 (5th Cir. 2005) (same).

Any postponement of Hughes's execution, either by habeas stay or civil rights injunction, requires the operation of this Court's equitable powers. *See Gomez v.*

*United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 653-54 (1992) ("Whether his claim is framed as a habeas petition or as a § 1983 action, [the petitioner] seeks an equitable remedy."). "Equity must take into consideration the State's strong interest in proceeding with its judgment . . . . A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Id.* at 654. Under consistent Fifth Circuit authorities cited above, this Court need "'not decide whether [Hughes] properly states a claim under § 1983, because even if he does, he is not entitled to the equitable relief he seeks' due to his dilatory filing." *White*, 429 F.3d 572, 574 (5th Cir. 2005) (quoting *Harris*, 376 F.3d at 417).

Notably, the Fifth Circuit has refused to consider the merits of a death row inmate's civil rights action when the inmate has "'delayed unnecessarily in bringing his claim.'" *Harris*, 376 F.3d at 416 (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). The Fifth Circuit has uniformly and regularly refused to entertain any civil rights challenge to the method of execution when the plaintiff has filed his case close to the execution date. *See Smith,* ___ F.3d at ___, 2006 WL 330114 at * 1 ("Although Smith's direct appeal has been final for more than nine years, he did not file the instant complaint until five days before his scheduled execution."); *Neville,* ___ F. 3d at ___, 2006 WL 291292, at *1 ("Neville's death penalty conviction was affirmed by the Texas

4

Court of Criminal Appeals in 1999.  Neville then waited until two days before his scheduled execution to file a method of execution challenge with the district court.  He, therefore, 'delayed unnecessarily in bringing his claim.'"); *White*, 429 F.3d at 574 ("White has been on death row for more than six years, and only now, with his execution imminent, has decided to challenge a procedure for lethal injection that the State has been using for his entire stay on death row."); *Harris*, 376 F.3d at 416, 417 (challenge by death row inmate to lethal injection method filed six weeks after United States Supreme Court's denial of certiorari on federal habeas petition, ten weeks before the scheduled execution, and eighteen years after petitioner's conviction held untimely).

Federal and state courts have considered various constitutional challenges to the integrity of Hughes's conviction and sentence *per se*.  A Texas jury convicted Hughes of capital murder and sentenced him to death in May 1998.  The Court of Criminal Appeals denied Hughes's direct appeal on April 12, 2000, *Hughes v. State*, 24 S.W.3d 833 (Tex. Crim. App. 2000), and the Supreme Court denied certiorari on November 6, 2000, *Hughes v. Texas*, 531 U.S. 980 (2000).  The Court of Criminal Appeals refused to grant relief on Hughes's concurrently filed state habeas proceedings.  Hughes unsuccessfully sought federal habeas corpus relief in federal court, and the Supreme Court denied certiorari on his federal petition on February 21, 2006.  *Hughes v. Dretke*, ___ U.S. ___, 2006 WL 386516 (Feb. 21, 2006).  Throughout his extensive legal

proceedings Hughes has known that he would die by lethal injection, "yet has chosen only this moment, with his execution imminent, to challenge a procedure for lethal injection that the state has used for an even longer period of time." *Harris*, 376 F.3d at 417.

Hughes seeks to differentiate his case legally from those recently rejected by the Fifth Circuit. First, Hughes asserts that bedrock jurisprudential principles prevent an inmate from challenging the appointed method of execution until an execution date draws near. Hughes argues that principles of standing and ripeness prevented his bringing an earlier lethal-injection challenge or seeking injunctive relief. "[T]he irreducible constitutional minimum of standing" and the prudential doctrine of standing are "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807 (2003). However, at least since June 30, 2004, the Fifth Circuit has been clear that "[a] challenge to a method of execution may be filed any time after the plaintiff's conviction has become final on direct review." *Neville,* ___ F. 3d at ___, 2006 WL 291292, at *1 (relying on *Harris*, 376 F.3d at 416); *see also White*, 429 F.3d at 574 ("The State concedes that when [the inmate's] conviction became final on direct review, his challenge to the State's method of execution, in the absence of dramatic changes to the State's protocol,

6

would have been appropriately filed at any time thereafter and need not await an imminent execution date. We agree."). The Fifth Circuit's assurance that similar challenges may proceed immediately after the finality of Texas's direct review ensure that those jurisprudential tenets would not bar litigants from seeking relief, notwithstanding the lack of an imminent execution date. *See Smith*, ___ F. 3d at ___, 2006 WL 330114, at *1; *Neville*, ___ F.3d at ___, 2006 WL 291292, at *1; *White*, 429 F.3d at 574. The Court discerns no material factual distinctions between this case and these recent, uniform Fifth Circuit authorities, which were forecast by the Fifth Circuit's ruling in *Harris* in 2004. The Court is bound to adhere to the teachings of these cases.

Hughes also seeks to distinguish his case factually from the relevant Fifth Circuit case law. Hughes argues that, unlike other petitioners, he did not wait until only days remained before his execution, he filed his case weeks before the execution date, showing the diligence absent in other cases. The attempted distinctions are unavailing under the binding Fifth Circuit authorities. As noted, during the last seven years, several federal and state courts have considered various constitutional challenges to the integrity of Hughes's conviction and sentence. Throughout his extensive legal proceedings Hughes has known that he would die by lethal injection, "yet has chosen only this moment, with his execution imminent, to challenge a procedure for lethal

injection that the state has used for an even longer period of time." *Harris*, 376 F.3d at 417. Hughes argues that, since the Supreme Court has only recently denied certiorari review from his federal habeas action, he could only now bring a lethal-injection challenge. The Fifth Circuit in *Harris*, however, rejected the argument that a section 1983 lethal-injection challenge must only proceed after the denial of certiorari from federal habeas review:

> The denial of certiorari may well have cast the issue in a new and urgent light for Harris, but it also entitled the state to set a date for, and proceed with, his execution. The brief window of time between the denial of certiorari and the state's chosen execution date . . . is an insufficient period in which to serve a complaint, conduct discovery, depose experts, and litigate the issue on the merits. By waiting until the execution date was set, Harris left the state with a Hobbesian choice: It could either accede to Harris's demands and execute him in the manner he deems most acceptable, even if the state's methods are not violative of the Eighth Amendment; or it could defend the validity of its methods on the merits, requiring a stay of execution until the matter could be resolved at trial. Under Harris's scheme, and whatever the state's choice would have been, it would have been the timing of Harris's complaint, not its substantive merit, that would have driven the result.

*Harris*, 376 F.3d at 417.[2] Under this case authority, Hughes could have filed this civil action any time after the Texas Court of Criminal Appeals affirmed his conviction and sentence in 2000. Hughes's conviction has been final for almost six years. Waiting

---

[2] There is a serious question whether this reasoning, which assumes the futility of the prisoner's habeas challenges and assumes the State will not alter the execution protocol, comports with other ripeness jurisprudence. Nevertheless, that issue must be addressed by the Supreme Court.

until two weeks before the date for execution, which the State set in December of 2005, amounts under the Fifth Circuit's reasoning to an eleventh-hour request that places the State in an "untenable position."

This Court "must decide the determinative question of whether it is being requested to enjoin the execution, rather than merely to enjoin an allegedly unnecessary medical procedure that precedes the execution." *Aldrich*, 388 F.3d at 161; *see also Nelson*, 541 U.S. at 746 (focusing on whether the method-of-execution challenge would necessarily prevent the State from carrying out an execution); *Harris*, 376 F.3d at 416 ("[O]ne of the animating principles in *Nelson* [was the] requirement that the § 1983 claims not unduly threaten the state's ability to carry out the scheduled execution.").[3] Given his ability to bring this claim much earlier, under Fifth Circuit reasoning, Hughes's legal attack seeks postponement of the execution of his sentence. The Circuit deems these circumstances a claim "to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *Harris*, 376 F.3d at 418.[4] In light of the Fifth Circuit's analysis, Hughes provides no legally viable

---

[3] Hughes worries that the executioner may have difficulty finding a vein, but offers nothing but speculation that Texas will resort to the disfavored "cut-down method" of lethal injection to gain intravenous access. Hughes, however, does not suggest that he has a history of difficulty gaining intravenous access. His complaint amounts to no more than speculation that Texas will use the "cut down" method of execution.

[4] As in *Harris*, Hughes simply "cannot excuse his delaying until the eleventh hour on the
(continued...)

justification for his delay in advancing his lethal-injection challenge.

The Court is aware that the Supreme Court recently granted a writ of certiorari in a similar case on the limited procedural question of whether civil-rights or habeas law provides the appropriate vehicle for similar method-of-execution challenges. *See Hill v. Crosby*, 05-8794,___ U.S. ___, ___ S. Ct.____, 2006 WL 171583 (Jan. 25, 2006). The Fifth Circuit, however, has strongly signaled that its "precedent . . . remains binding until the Supreme Court provides contrary guidance." *Neville*, ___ F.3d at ___, 2006 WL 291292, at *1 (quoting *In re Elizalde*, No. 06-70002 (5th Cir. Jan. 31, 2006)); *see also Rutherford v. Crosby*, ___ F.3d ___. 2006 WL 224123, *1 (11th Cir. Jan. 30, 2006) ("A grant of certiorari, however, is not a decision and does not affect our obligation, or the obligation of district courts in this circuit, to follow prior decisions of this Court."). Moreover, the Supreme Court has denied certiorari in recent challenges to Texas's lethal-injection protocol. *See Smith v. Livingston*, ___ S. Ct. ___, 2006 WL 337588 (Feb. 15, 2006); *Neville v. Livingston*, 126 S. Ct. 1192 (2006); *Elizalde v. Livingston*, 126 S. Ct. 1191 (2006). This Court thus is obligated to abide by clear circuit precedent and must therefore deny Hugh's request to stay his execution until the Fifth Circuit or Supreme Court rules otherwise.

---

[4]   (...continued)
ground that he was unaware of the state's intention to execute him by injecting the three chemicals he now challenges." *Harris*, 376 F.3d at 417.

Whether by stay of execution or by injunction, this Court cannot stop Hughes's execution from proceeding. It is therefore

**ORDERED** that Defendants' motion to dismiss [Doc. # 8] is **GRANTED** and Hughes' Complaint [Doc. # 1] is **DISMISSED with prejudice**. It is further

**ORDERED** that Hughes's motion to proceed *in forma pauperis* [Doc. # 2 ] and counsel's request to proceed *pro hac vice* [Doc. # 4] are **GRANTED**. It is further

**ORDERED** that Hughes's motion for preliminary injunction or temporary restraining order to prevent Texas from implementing his execution by the protocol currently in use [Doc. # 7] is **DENIED**.

SIGNED at Houston, Texas, on this **13th** day of **March, 2006**.

_____
Nancy F. Atlas
United States District Judge